# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIM. NO.: 10-cr-13 |
| v. ) | |
| ) | |
| ASWAD FORD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Finch, Senior Judge

THIS MATTER comes before the Court on the Motion to Suppress filed by Defendant Aswad Ford ("Defendant" or "Ford"). Defendant seeks to suppress evidence allegedly seized pursuant to an illegal search and seizure of the Defendant and the vehicle in which he was a passenger. The Government opposes the motion on the grounds that evidence was obtained pursuant to a valid Terry stop. For the reasons stated below, the Defendant's Motion to Suppress is DENIED.

**I.  Background**

On June 4, 2010, an evidentiary hearing was held on this matter. The following facts are based on testimony provided at that hearing as well as the affidavit of Special Agent Special Agent Jason R. Oakley ("Oakley") of the FBI.

On February 17, 2010 at approximately 10:20 a.m., Special Agent Oakley and DEA Task Force Officer Donnell Samuel ("Samuel") began conducting surveillance of the residence

located at # 696 Estate Barren Spot prior to the execution of a search warrant at the residence. At this time, Oakely was aware that the HIDTA task force ("Task Force") was executing a related search warrant at another location. From a distance of approximately 100 to 200 yards, Oakley and Samuel observed two individuals, later identified as Alphonso Garvey and Aswad Ford, making several trips from the residence to a green Honda Accord. The officers suspected that Garvey and Ford were removing drugs and other items of evidentiary value from the residence in anticipation of the execution of the search warrant at that location. When Garvey and Ford departed the residence in the green Honda Accord, Oakley and Samuel pulled their car in front of the Honda, blocking its passage. The officers were driving an unmarked vehicle but Oakley was wearing a blue bullet-proof vest with "FBI" emblazoned in large yellow letters, while Samuel was wearing a black bullet-proof vest with "POLICE" emblazoned in large white letters. Samuel recognized Ford because of his contact with him as a law enforcement agent in the past.

When the officers exited their vehicle, Oakley announced that he was an FBI agent and commanded Garvey and Ford to show their hands but Ford was slow to comply, even after repeated commands. Ford appeared to be manipulating some object under the dashboard. Finally, Ford showed his left hand and then slowly showed his right hand. Oakley removed Garvey from the car while Samuel removed Ford. Samuel walked Ford to the driver's side of the vehicle. Oakley observed that Ford was walking hunched over and learning forward and appeared to be hiding his right side from Samuel. Samuel then patted down Ford and recovered a loaded magazine containing 9mm ammunition from Ford's left front pocket. Oakley then observed a black submachine gun in Ford's right front waistband. Ford was placed face down on the ground and the weapon was retrieved from the waistband. The weapon appeared to be a 9

mm Ingram Model 11 submachine gun. The weapon had been painted black rendering the serial numbers invisible.

## II. Discussion

### A. Fourth Amendment Limitations on search and seizure

The Fourth Amendment protects citizens from unreasonable searches and seizures. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005) (citing U.S. Const. amend IV). When a defendant attacks the legality of a search and seizure through a motion to suppress, "the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *Id.* A person is "seized" within the meaning of the Fourth Amendment when the circumstances surrounding the incident indicate to a reasonable person that he is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (submission to "a show of authority" establishes a seizure) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Generally, a seizure must be effectuated pursuant to a warrant based on probable cause to comport with the Fourth Amendment. *Brown*, 448 F.3d at 244 (citing *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir.2002). However, an exception to the warrant requirement, established in *Terry v. Ohio*, 392 U.S. 1 (1968), permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Brown*, 448 F.3d at 244 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Reasonable suspicion requires more than a "mere hunch." *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). However, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* To determine whether reasonable suspicion exists, the court considers the totality

of the circumstances and gives substantial deference to the officer's assessment of what constitutes criminal activity. *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989); *Arvizu*, 534 U.S. at 273). Under a totality of the circumstances analysis, actions that might appear innocent in isolation will support reasonable suspicion when the actions viewed collectively form a particularized and objective basis to conduct an investigatory stop. *Arvizu*, 534 U.S. at 278.

As the Supreme Court has noted, a key purpose of such a Terry stop is to secure the safety of the officer or of other individuals when the officer reasonably believes that "the persons with whom he is dealing may be armed and presently dangerous." *Terry*, 392 U.S. at 30. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Yamba*, 506 F.3d 251, 255 (3d Cir. 2007) (citing *Terry*, 392 U.S. at 27.)

Any contraband "spontaneously discovered during a properly executed Terry search" may be confiscated. *Id*. at 259.[1] On the other hand, any evidence obtained pursuant to an investigatory stop that does not meet the requirements of the exception must be suppressed as

---

[1] The Third Circuit has set forth the limitations on the intrusiveness permitted during a Terry search:

> Assuming that an officer is authorized to conduct a *Terry* search at all, he is authorized to assure himself that a suspect has no weapons. He is allowed to slide or manipulate an object in a suspect's pocket, consistent with a routine frisk, until the officer is able reasonably to eliminate the possibility that the object is a weapon. If, before that point, the officer develops probable cause to believe, given his training and experience, that an object is contraband, he may lawfully perform a more intrusive search. If, indeed, he discovers contraband, the officer may seize it, and it will be admissible against the suspect. If, however, the officer goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

*Yamba*, 506 F.3d at 259 (citations and internal quotations omitted).

"fruit of the poisonous tree." *Brown*, 448 F.3d at 244 (citations omitted). Once a defendant has challenged the admissibility of evidence taken pursuant to the Terry stop, the burden of demonstrating reasonable suspicion rests with the government. *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002) (citations omitted).

### B. Terry Stop

The Defendant challenges the admissibility of the evidence seized by police and argues that the police lacked probable cause or reasonable suspicion to search and seize the Defendant. However, the Government contends that police had reasonable suspicion to stop the car in which Defendant was a passenger based on the fact that (1) the Defendant was observed making several trips between a vehicle and a residence upon which a search warrant had been executed (# 696 Estate Barren Spot) but was yet to be implemented and (2) that Defendant's activity during this time period coincided with the execution of a related search warrant on another residence. (Oakley Aff. 1; Gov't Opp. to Mot. to Supp. 2.) When Agent Oakley and Officer Samuel observed this conduct, they believed that Defendant Aswad Ford and Alphonso Garvey were removing "drugs and items of evidentiary value." (Oakley Aff. 1.)

The Court first finds that the traffic stop and subsequent removal of Garvey and Ford constituted a seizure for purposes of the Fourth amendment. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) ("A traffic stop of a motor vehicle is a seizure of the vehicle's occupants for the purposes of the Fourth Amendment") (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Mosley*, 454 F.3d 249, 253 (3d Cir.2006)); *see also Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1329 (9th Cir. 1995) ("Ordering someone to get out of a car is itself a 'seizure'") (citing *United States v. Shabazz*, 993 F.2d 431, 437 n. 7 (5th Cir.1993).

However, the Court also finds that the officers' observations of Garvey and Ford's movements at #696 Estate Barren Spot along with the officers' knowledge that a search warrant had been issued on that residence and that the execution of a related warrant was then underway provided the officers with reasonable suspicion that "criminal activity was afoot." *See e.g.*, *United States v. Hill*, 252 Fed. Appx. 532, 534, 2007 WL 3152455, at *1 (4th Cir. 2007) (reasonable suspicion justified a stop where police were conducting surveillance of a house suspected to contain marijuana and weapons and individuals began transferring items from the house into the vehicles); *United States v. Rivera*, 738 F. Supp. 1208, 1216 (N.D. Ind.1990) (pat down of defendant was reasonable where defendant in a vehicle approached a residence where a search warrant was being executed to search for evidence of narcotics activity). Thus, the investigatory stop of the vehicle in which Defendant was a passenger was a valid Terry stop.

A Terry stop that is supported by reasonable suspicion at the outset may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution. *Johnson*, 592 F.3d at 451 (citing *United States v. Rickus*, 737 F.2d 360, 366 (3d Cir.1984). The manner in which the stop is conducted must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 452 (citing *Terry*, 392 U.S. at 19-20). Defendant drew the Court's attention to the fact that the officers had guns drawn during the stop and appears to argue that the conduct of the officers exceeded the limitations of a Terry stop.[2]

---

[2] Defendant argued that the Terry stop became a "seizure" when the officers removed Ford and Garvey from the car at gunpoint. However, there is no question that a Terry stop constitutes a seizure. *See United States v. Edwards*, 53 F.3d 616, 620 (3d Cir. 1995) ("Clearly, a Terry stop is a seizure . . . and one seized is by definition not free to leave."). Instead, the question is whether the intrusiveness of the stop exceeds the level of suspicion supporting the stop. *Id*. ("Under the Terry cases, the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect.") (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir.1995).

The Court disagrees and concludes that actions taken by the officers during the stop were not excessively intrusive in scope or manner.

First, after stopping the Honda, the officers asked Defendant Ford and Alphonso Garvey to show their hands. This was a non-intrusive request to ensure the safety of the officers. When Ford was slow to respond, and kept one hand out of sight and under the dashboard, the officers had reason to take the further measure of removing the occupants of the vehicle to secure their safety. After the officers removed Ford and Garvey from the vehicle, and Ford began walking hunched over and hiding his right side from Samuel, the officers had even greater reason to believe that Ford was "armed and presently dangerous." Given the suspicious conduct of Ford, the Court finds that the act of removing Ford from the vehicle and frisking him was a reasonable manner of securing the officers' safety. *See, e.g., Johnson*, 592 F.3d at 452-53 (finding that "[a]n officer with reasonable suspicion that the occupants of a vehicle are armed and dangerous does not act unreasonably by drawing his weapon, ordering the occupants out of the vehicle, and handcuffing them until the scene is secured"). The Court declines to adopt the Defendant's view that the actions of the officers exceeded the bounds of a Terry stop or converted it into a de facto arrest. *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir.1995) (recognizing that "the vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se.") (collecting cases).

### III. Conclusion

The Government has sustained its burden to show that the officers who detained Ford during an investigatory stop had reasonable suspicion to do so and that the removal of Ford from the vehicle and subsequent frisk were reasonable in light of Ford's suspicious movements and

failure to adequately respond to police orders. Accordingly, the Defendant's motion to suppress is DENIED.

**ENTER**:

Dated: June 4, 2010

_____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE